In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 19-1835

PLANNED PARENTHOOD OF WISCONSIN,
INC., *et al.*,

*Plaintiffs-Appellees,*

*v.*

JOSHUA L. KAUL, *et al.*,

*Defendants-Appellees.*

APPEAL OF: WISCONSIN LEGISLATURE,

*Proposed Intervenor.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin,
No. 3:19-cv-00038-wmc — **William M. Conley**, *Judge.*

———————————

ARGUED SEPTEMBER 6, 2019 — DECIDED NOVEMBER 7, 2019

———————————

Before FLAUM, SYKES, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. A state can speak in litigation only through its agents and may select its agents without the interference of the federal courts. Typically, a state chooses to designate a singular attorney general to defend its interests, but

nothing in the United States Constitution mandates this pro-
cedure, or even the existence of an attorney general position.
The State of Wisconsin has chosen to have an attorney general
as its representative, but it also has recently provided a mech-
anism by which its legislature (or either of its constitutive
houses) can intervene to defend the State's interest in the con-
stitutionality of its statutes. Relying on this provision, the
Wisconsin Legislature moved to intervene in this lawsuit in
which the Wisconsin Attorney General was already defending
state law. The district court denied the motion.

Though we acknowledge that federal law does not man-
date that a state speak in a single voice, we conclude that Fed-
eral Rule of Civil Procedure 24 expresses a preference for it.
The Legislature's motion to intervene as of right was appro-
priately denied because the Legislature did not demonstrate
that the Attorney General is an inadequate representative of
the State's interest absent a showing he is acting in bad faith
or with gross negligence. The district court has discretion still
to permit the Legislature to intervene as a second voice for the
State, or even perhaps on its own behalf, but nothing in the
record demonstrates an abuse of that discretion. We therefore
affirm the district court's decision in all respects.

## I. Background

The underlying allegations in this suit are largely irrele-
vant to the issues before the court, so we offer only the barest
of contexts. Planned Parenthood of Wisconsin, Inc. (PPWI),
and four of its employees filed a suit against Wisconsin's At-
torney General and an assortment of other state officials, all
in their official capacities. PPWI sought to enjoin enforcement
of state abortion regulations that it alleges violate the consti-
tutional rights of it and its patients. The Attorney General,

acting as counsel for all defendants, answered the complaint instead of moving to dismiss for failure to state a claim. His answer denied that the regulations violated the Constitution.

A week later, the Wisconsin Legislature moved to intervene in the suit, hoping to dismiss the complaint for failure to state a claim. Consistent with the requirement that a motion to intervene be accompanied by a pleading, Fed. R. Civ. P. 24(c), the Legislature also provided an answer that tracked the Attorney General's, but with legal authorities. The Legislature sought to intervene both as of right and with the court's permission. For its right to intervene, the Legislature relied principally on a recently enacted state statute that allows "the assembly, the senate, and the legislature" to intervene "at any time in [an] action as a matter of right" if "a party to an action challenges in state or federal court the constitutionality of a statute, facially or as applied." Wis. Stat. § 803.09(2m). It also asserted an interest based on Supreme Court precedent holding that legislators had standing to challenge actions that nullified the "effectiveness of their votes." *Coleman v. Miller*, 307 U.S. 433, 438 (1939). Both PPWI and the Attorney General opposed the Legislature's intervention.

The district court denied the motion to intervene as of right on three grounds. First, the Legislature lacked an interest that was unique to it. Second, the Legislature's interest in the effectiveness of its votes would not be impaired even if the regulations were declared unconstitutional. Third, the Attorney General had the duty to defend the statutes being challenged and therefore was presumed to be an adequate representative. Finally, the court declined to allow the Legislature permissive intervention for many of the same reasons it was

unconvinced of a right to intervene, as well as concerns with politicizing and complicating the case.

The Legislature appealed the denial of its motion to intervene. We have jurisdiction because, "from the perspective of a disappointed prospective intervenor, the denial of a motion to intervene is the end of the case, so an order denying intervention is a final, appealable decision under 28 U.S.C. § 1291." *CE Design, Ltd. v. Cy's Crab House N., Inc.*, 731 F.3d 725, 730 (7th Cir. 2013).

## II. Intervention as of Right

To intervene in a federal lawsuit under Federal Rule of Civil Procedure 24(a)(2), a proposed intervenor needs to meet four elements: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir.), *cert denied*, 2019 WL 4921330 (2019). A party granted leave to intervene as of right under this rule has the "full rights of a party." *See Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1022 (7th Cir. 2006). The proposed intervenor has the burden of establishing all four elements; the lack of even one requires that the court deny the motion. *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001). We review the denial of a motion to intervene as of right de novo, except to the extent that it was denied as untimely. *See id.* Here, timeliness is not disputed, so our review is plenary.

The first question that we must address is the weight to give to Wisconsin law. Section 803.09(2m) provides that "the

legislature may intervene … at any time … as a matter of right" in an action "in state or federal court." This language implies that intervention should be automatic, without any input from the trial court, as long as the conditions for authorization under Wis. Stat. § 13.365 are met. Wisconsin's courts may apply § 803.09(2m) that way, but no one argues that this interpretation can control in federal court. The right to intervene "is a purely procedural right and even in a diversity suit it is the Federal Rules of Civil Procedure rather than state law that dictate the procedures, including who may intervene, to be followed." *Williams v. Katz*, 23 F.3d 190, 192 (7th Cir. 1994). The supremacy of federal procedure is even more pronounced in a case, like this one, arising under the Federal Constitution. The parties agree on this point at least: the statute cannot supplant the Federal Rules of Civil Procedure and make intervention automatic. Nevertheless, we think the statute represents the State of Wisconsin's strong policy judgment of how it wishes to litigate in federal court. We will therefore rely on it to "inform the Rule 24(a)(2) calculus" even if "it cannot displace the requirement that a would-be intervenor satisfy each of the rule's prerequisites." *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 208 (1st Cir. 1998); *accord Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011).

Looking to the three disputed elements of intervention, we can assume that the Legislature has an interest that might be impaired. We nevertheless conclude that this interest is being adequately represented by the Attorney General and affirm the denial of the motion to intervene as of right.

## A. Interest

Though we will assume the Legislature has an interest, we must define what that interest is before we can consider whether it is adequately represented.

We, unlike the district court, have the benefit of the Supreme Court's recent decision in *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945 (2019), to help us define the possible interests at play. There, the Supreme Court was called on to address whether a single house of the Virginia legislature had standing to appeal a judgment in a case in which it had already intervened. *Id.* at 1951. In doing so, the Supreme Court expressly distinguished the two capacities through which the House had sought to appeal—as a representative of the state or as a legislature—and addressed and rejected each in different sections of its opinion. *Id.* at 1951, 1953.

Though we are concerned here with the "interest" element of Rule 24, the standing inquiry can assist us, because we have required "more than the minimum Article III interest" for intervention. *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009). A party without standing cannot intervene as of right, so we must determine in which of these two respects the Legislature is arguing for its standing to defend state law. The Legislature has complicated our analysis because even up until its opening brief (filed about a month before the decision in *Bethune-Hill*), it had switched freely between championing the State's interests and insisting on its "unique institutional interests" as a legislature. At oral argument, though, it clarified that it was seeking to intervene only as an agent of the State.

This was a wise concession. The Legislature argued in the district court that its votes would be nullified by an adverse ruling under *Coleman v. Miller*, 307 U.S. 433. *Bethune-Hill* confirms the district court rightly dismissed this argument. *Coleman* "concern[ed] the results of a legislative chamber's poll or the validity of any counted or uncounted vote" and did not extend to "the constitutionality of a concededly enacted [statute]." *Bethune-Hill*, 139 S. Ct. at 1954 (citing *Raines v. Byrd*, 521 U.S. 811, 823 (1997)). The regulations PPWI challenges are also "concededly enacted" (the Legislature notes that some have existed for decades), and so the Legislature-as-legislature has no interest in this case under Article III or Rule 24.

We are, however, comfortable adopting the district court's assumption that § 803.09(2m) gives the Legislature standing as an agent of the State of Wisconsin. The district court nevertheless concluded that this assumption was not enough for purposes of Rule 24, because the Legislature's interest was not "unique" under *Wisconsin Education Association Council v. Walker* (*WEAC*), 705 F.3d 640, 658 (7th Cir. 2013). In *WEAC* we used the phrase "unique" as a shorthand for the proposition that an intervenor's interest "must be based on a right that belongs to the proposed intervenor rather than to an existing party in the suit," *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985). We need not decide whether the Legislature's interest is unique in that sense, because the Legislature has the burden of proving all four elements of intervention, and we agree with the district court that the Legislature has failed to

establish that the Attorney General is an inadequate representative of the State's interests.[1]

## B. Adequacy of Representation

We have recognized three standards for the adequacy of representation under Rule 24 depending on the context of each case. The default rule is a liberal one: "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007). Where the prospective intervenor and the named party have "the same goal," however, there is a rebuttable presumption of adequate representation that requires a showing of "some conflict" to warrant intervention. *WEAC*, 705 F.3d at 659. This presumption of adequacy becomes even stronger when the representative party "is a governmental body charged by law with protecting the interests of the proposed intervenors"; in such a situation the representative party is presumed to be an

---

[1] The Legislature has, in passing, directed us to a state trial court decision in which a judge opined that the Legislature could intervene only on its own behalf and that the "legislative defendants' lawyer cannot represent the State of Wisconsin." *SEIU Local 1 v. Vos*, 2019 WL 1396826, at *18–20 (Dane Cty. Cir. Ct. Mar. 26, 2019) (denying preliminary injunction declaring § 803.09(2m) unconstitutional), *bypass appeal granted*, Nos. 2019AP614-LV & 2019AP622 (Wis. arg. Oct. 21, 2019). Though § 803.09(2m) and the concerns the State sought to address through its enactment inform our analysis, we are, in the end, interpreting only federal law, so we need not consider the possibility that the Wisconsin Supreme Court will adopt this same interpretation. At least currently, we see some tension, but no inherent contradiction, in the possibility that the statute grants the Legislature authority to represent itself in state court, but only standing to represent the State in federal court.

adequate representative "unless there is a showing of gross negligence or bad faith." *Ligas*, 478 F.3d at 774. The district court applied the last of these tests and found that the Legislature had failed to meet it.

The Legislature does not ask us to abandon our three-tiered structure but argues that the district court applied the wrong standard. It accepts that it and the Attorney General currently have the same goal—to uphold the constitutionality of the challenged statutes. It also does not dispute the general proposition that the Attorney General is "charged by law" with protecting the State's interest in the enforcement of its laws. *See, e.g., Helgeland v. Wis. Municipalities*, 745 N.W.2d 1, 24 (Wis. 2008) ("The Attorney General of Wisconsin has the duty by statute to defend the constitutionality of state statutes."). Though it agrees these facts would obligate a private party seeking intervention to demonstrate the Attorney General's bad faith or gross negligence, the Legislature contends that this should not be the end of the inquiry because Wisconsin has concluded, as a policy matter, that the Attorney General should not be the exclusive representative of the State's interests. A federal court, it argues, should respect this sovereign judgment and permit intervention as long as there is any reason to believe the State's current representation "may be inadequate."

It is true that our prior cases applying a heightened standard each involved a private party seeking to intervene on the side of a governmental entity. In the school desegregation cases, it was groups of parents looking to defend school boards' policies. *See United States v. S. Bend Cmty. Sch. Corp.* (*South Bend I*), 692 F.2d 623, 627 (7th Cir. 1982); *United States v. Bd. of Sch. Comm'rs of Indianapolis*, 466 F.2d 573, 575 (7th Cir.

1972). Likewise, in *Ligas*, it was a woman with disabilities who sought to defend the current care provided by two Illinois agencies from attack by a group who wanted different care. 478 F.3d at 774–75. We agree that our precedent does not directly control this case, but that is not, by itself, a reason to reach another result.[2]

The intervention of another governmental entity is different, the Legislature urges, because the State has a sovereign right to determine how it will represent itself in federal court. It relies principally on *Bethune-Hill*, in which the Supreme Court held that the Virginia House did not have standing as an agent of the state because Virginia had chosen to "speak as a sovereign entity with a single voice." 139 S. Ct. at 1952. The Court contrasted this with states that have chosen to authorize their legislatures to litigate "either generally or in a defined class of cases," including, by way of example, Indiana. *Id.* (citing Ind. Code § 2-3-8-1). As the Legislature sees it, Wisconsin has, like Indiana, chosen to split its sovereign voice among several entities, so a federal court must respect this decision by lowering the burden for it to intervene.

*Bethune-Hill* cannot bear the weight the Legislature puts on it. The Court was simply not addressing a situation, like

---

[2] The Legislature also contends that in each case the government was the party with "exclusive" authority to represent the interests involved. We do not see how this interpretation can square with our application of the standard to plaintiff-intervenors. *See United States v. S. Bend Cmty. Sch. Corp.* (*South Bend II*), 710 F.2d 394, 396 (7th Cir. 1983); *South Bend I*, 692 F.2d at 628. The government does not have exclusive authority to represent those who want to *challenge* state policies. That was a reason we denied them intervention: the proposed intervenors were free to "prosecute their own suit against the school board." *South Bend II*, 710 F.2d at 396.

this one, in which two state entities were trying to speak on behalf of the State *at the same time*. The Court even framed the question presented as whether the Virginia House had "authority to *displace* Virginia's Attorney General as representative of the State," *id.* at 1950 (emphasis added), not whether it had the right to represent the State in parallel with the Attorney General. The Court had no reason to reach this question because the Virginia Attorney General had dropped out of the case. The Court was not being asked to allow Virginia two voices, but to grant it just the one, the House's.

In fact, *every* decision the Legislature cites as favorable authority involves a situation in which a legislature intervened once the governmental defendant's default representative had dropped out of the case. *See, e.g.*, *Karcher v. May*, 484 U.S. 72, 75 (1987); *McLaughlin v. Hagel*, 767 F.3d 113, 115 n.1 (1st Cir. 2014); *Adolph Coors Co. v. Brady*, 944 F.2d 1543, 1546 (10th Cir. 1991). Moreover, none discusses the propriety of intervention under Rule 24 but merely recognizes that intervention had occurred. Those courts of appeals that have been asked to consider a state entity's intervention alongside existing governmental parties have continued to apply a presumption of adequacy. *See Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) (concluding that legislators' intervention on side of Pennsylvania Attorney General was properly denied); *Envtl. Def. Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979) (affirming denial of intervention for water districts represented by their states); *see also United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984) (rejecting argument that presumption applies *only* to intervenors that are "political subdivisions of the state"); *cf. Saldano v. Roach*, 363 F.3d 545, 553 (5th Cir. 2004) (denying intervention to district attorney because attorney

general adequately represented state even under "'may be' inadequate" standard). The Legislature points us to no authority granting a state—or any party for that matter—the right to have two separate, independent representatives within the same suit.

The closest it gets is a case out of the Sixth Circuit, *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999 (6th Cir. 2006). The court there granted the State of Ohio and its General Assembly (both jointly represented by Ohio's Attorney General) the right to intervene in a suit in which the Ohio Secretary of State was already participating in his official capacity. *Id.* at 1008. We do not find that decision persuasive as applied to this case. First, though the Sixth Circuit granted intervention under the "may be inadequate" standard, it did so in the context of the Secretary of State's refusal to appeal a preliminary injunction. *Id.* The posture of the case is, thus, more like *Bethune-Hill* and the other cases the Legislature cites, where the intervenor was the only voice for the state on appeal, even if there was an understanding that intervention would continue in the district court. Second, the court premised its holding on the finding that "the State and the Secretary do not have 'the same ultimate objective'" and so no presumption of adequate representation applied. *Id.* Here, the Attorney General and the Legislature have the same objective— ensuring the validity of Wisconsin law—even if the Legislature might desire a more aggressive litigation position.[3]

---

[3] The Sixth Circuit had no reason to consider whether to apply a presumption of adequacy based on the Secretary of State's status as a governmental party because it has not adopted that presumption. *See Stupak-Thrall v. Glickman*, 226 F.3d 467, 479 (6th Cir. 2000).

The Legislature goes further than sharing a goal with the Attorney General, though, and intends to represent the same client—the State of Wisconsin. Its status as a state entity hinders it in this framing because it must go beyond the argument any private party could make—that Wisconsin's interest does not align fully with its own—and has the unenviable task of convincing a court that the Attorney General inadequately represents *Wisconsin*, despite his statutory duty. Wisconsin's interest may be a complicated question, as a state is a fundamentally corporate body that includes many competing constituencies, but merely showing some conflict among those constituencies is not enough to justify this extraordinary finding, even with deference to Wisconsin law. The district court was right to hold the Legislature to the same standard as a private party and insist on a concrete showing of the Attorney General's bad faith or gross negligence before permitting intervention. The Legislature, however, has offered only "quibbles with … litigation strategy," and that is not enough to show even "some conflict," *WEAC*, 705 F.3d at 659.[4]

---

[4] We see no flaws in the concurrence's history of the gross negligence or bad faith standard, Concurring Op. at pp. 26–32, but that the rule might be of questionable origin does not convince us to carve out an exception for the Legislature. Whether we should revisit the standard entirely is a question for another case—the Legislature does not ask us to do so and it would not change the result today. We also doubt that the difference between our approach and the concurrence's will have much practical effect on the Legislature's intervention in this or similar cases. As we explain below, permissive intervention provides a superior path for the Legislature to litigate beside the Attorney General, when that is warranted, and does not require the Legislature to demonstrate that its interests are inadequately represented under any standard.

An intervenor must meet this high standard before it can subject the district court to the intractable procedural mess that would result from the extraordinary step of allowing a single entity, even a state, to have two independent parties simultaneously representing it. If the Legislature were allowed to intervene as right, then it and the Attorney General could take inconsistent positions on any number of issues beyond the decision whether to move to dismiss, from briefing schedules, to discovery issues, to the ultimate merits of the case. The district court would, in that situation, have no basis for divining the true position of the State of Wisconsin on issues like the meaning of state law, or even for purposes of doctrines like judicial estoppel.

That the Wisconsin Attorney General's authority is governed by state law, and thus ultimately subject to the Legislature's control, does not change our analysis. True, the powers and duties of the attorney general are "prescribed by law," Wis. Const. Art. VI, § 3, and that means "statutory law," *State v. City of Oak Creek*, 605 N.W.2d 526, 532 (Wis. 2000). A state has a sovereign right to govern its representative agents as it sees fit, and a federal court generally has no reason to question the state's choices (at least if the representative is, in fact, an agent, *cf. Hollingsworth v. Perry*, 570 U.S. 693, 712–13 (2013)). So, we can see no reason why a federal court would bat an eye if a state required its attorney general to withdraw from his representation and allow another entity, including a legislature, to take over a case. This would be, from the federal court's perspective, the same as a state that elected not to have an attorney general at all. This, however, is not what Wisconsin purports to do. The Legislature wants to litigate beside the Attorney General, not in place of him. In that respect, § 803.09(2m) is not an exercise of the State's undoubted power

to control the Attorney General, it is an attempt to control the proceedings in the court. We have no right to opine whether this law can have that effect on a state court, but even the Legislature concedes it cannot on a federal one.

We are particularly concerned with the scope of the Legislature's argument because it has no limiting principle that we can see; it depends only on a state's power to designate agents and not on any factor unique to the Legislature. Though we have no reason to doubt the good faith of the Legislature in this case, we are concerned that a state could use this same logic to overwhelm a district court, whose hands would be tied by the fundamentally non-discretionary nature of Rule 24(a)(2). Under the Legislature's rule, a state could split its voice among as many entities as it wishes, and each would be able to intervene if it could meet the minimal standard that its interest *may* be inadequately represented. Indeed, the Legislature, relying on *SEIU*, notes in its brief that § 803.09(2m) allows "the Legislature, the Assembly or the Senate" to intervene as of right and "*each of them* can hire outside counsel." 2019 WL 1396826, at *18 (emphasis added). By the Legislature's understanding, then, Wisconsin could have up to four independent agents representing it in this case, each of which would have "the full rights of a party." *Aurora Loan*, 442 F.3d at 1022. Perhaps a state could even designate its individual legislators as agents and thereby flood a district court with a cacophony of voices all purporting to represent the state. Though we respect a state's autonomy as a sovereign, we cannot leave a district court powerless to control litigation involving states. The district court must maintain the authority to assess whether an intervenor meets the ordinary Rule 24 requirements, including the need to demonstrate inadequacy of representation, in each individual case.

If the state's unbridled authority to designate an agent is limited to *an* agent, in the singular, regardless of who or what that agent is, then the states can maintain their autonomy without the risk of unmanageable litigation in the federal courts. Likewise, we have no concern if *Bethune-Hill*'s statements about a state's right not to speak in one voice are limited to the appellate standing context. No matter how many people can appeal a judgment on behalf of a state, there would still be only a single appeal—that of the state itself. The worst that can be said is that this application "would result in an appeal that is otherwise not forthcoming," *Flying J*, 578 F.3d at 573. A state is free to decide how often it wishes to appeal, and if it chooses to appeal more often, that prejudices no one and causes no unjustified strain on the courts. *Id.*

### III. Permissive Intervention

At oral argument, the Legislature acknowledged our concern with the district court's lack of discretion, if we accepted its arguments regarding intervention as of right, and it responded by suggesting that permissive intervention may be the better solution. We agree. Permissive intervention allows the district court to consider a wide variety of factors, including the needs of federal-state comity emphasized by the Legislature. Yet, unlike the more mechanical elements of intervention as of right, it leaves the district court with ample authority to manage the litigation before it. The court can even place conditions on the scope of permissive intervention, allowing more voices to be heard without overcomplicating the case with additional claims, defenses, discovery, and conflicting positions. *See Lucent Techs.*, 642 F.3d at 741; *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992); 7C Charles Alan Wright, et al., Federal Practice &

Procedure § 1922 (3d ed.); *cf. Korczak v. Sedeman*, 427 F.3d 419, 422 (7th Cir. 2005).[5]

The district court undoubtedly had the discretion to permit the Legislature's intervention in this case. Under Federal Rule of Civil Procedure 24(b)(1) a district court "may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." The Legislature has a defense—that PPWI's complaint fails to state a claim—that shares a question of law with the main action. The decision to permit intervention is "wholly discretionary," and we review the denial of permissive intervention for an abuse of that discretion. *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). The Rule requires the court to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3), but otherwise does not cabin the district court's discretion. We have thus said that "[r]eversal of a district court's denial of permissive intervention is a very rare bird indeed, so seldom seen as to be considered unique." *Shea v. Angulo*, 19 F.3d 343, 346 n.2 (7th Cir. 1994) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)). This is not that unique case.

The district court denied permissive intervention "for many of the same reasons [it] found that the proposed intervenor failed to demonstrate a right to intervene." It relied on

---

[5] It is also possible that permissive intervention does not require standing if the existing parties present a case or controversy, so that the Legislature could be allowed to intervene even on its own behalf. We have not yet directly addressed this question, *see Bond v. Utreras*, 585 F.3d 1061, 1069 (7th Cir. 2009), and we have no occasion to do so now.

two district court decisions for the proposition that "the case for permissive intervention disappears" when a proposed intervenor fails "to overcome the presumption of adequate representation by the government." *One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 399 (W.D. Wis. 2015); *Menominee Indian Tribe of Wis. v. Thompson*, 164 F.R.D. 672, 678 (W.D. Wis. 1996). The court also expressed concern that the Legislature's intervention "would likely infuse additional politics into an already politically-divisive area of the law and needlessly complicate this case."

The Legislature reads the district court's order as imposing an inadequacy of representation element on permissive intervention and refusing to exercise any discretion for failure to prove it. Because there is no such element, the Legislature contends the district court erred as a matter of law.

Though we agree that the Legislature is not required to demonstrate that the Attorney General is an inadequate representative (under any standard) for it to intervene permissively, we do not understand the district court's order to say otherwise. Rule 24(b)(1) is vague about the factors relevant to permissive intervention, but it is not just a repeat of Rule 24(a)(2). We have thus cautioned courts not to deny permissive intervention solely because a proposed intervenor failed to prove an element of intervention as of right. *See City of Chicago v. FEMA*, 660 F.3d 980, 987 (7th Cir. 2011); *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 509 (7th Cir. 1996). Still, we have never gone so far as confining the district court's discretion to only the two mandatory factors in Rule 24(b)(3) or to prohibit consideration of the elements of intervention as of right as discretionary factors. Even when a district court "did not explicitly break out its

reasoning" on the two requests, we have affirmed so long as the "decision shows a thorough consideration of the interests of all the parties." *Ligas*, 478 F.3d at 776.

The district court here separated its analyses and made clear that it was exercising its discretion in denying permissive intervention. Even if it referred to its reasoning in denying intervention as of right, its discussion of its discretion was thorough and well-reasoned. The court weighed the various parties' interests and found that the value the Legislature added to the Attorney General's representation of the State was outweighed by the practical complications that could have resulted from the State's having two representatives at the same time. On the present record, we cannot say the court abused its broad discretion in weighing the costs and benefits of permissive intervention. The district court should be ready to reconsider its ruling if the balance should ever shift or if the Legislature is willing to accept conditions, however strict, that would reduce any disruption to levels the court will tolerate—perhaps even as stringent as allowing it only to file amicus briefs and oppose any consent decrees.

## IV. Conclusion

States must have the right to designate their agents, but federal courts must also be able to manage the scope of litigation before them. The proper balance between these two concerns is governed by Federal Rule of Civil Procedure 24 and the requirement that a proposed intervenor show that the existing parties do not adequately represent its interests before it has a right to intervene. Nothing in the record demonstrates the Attorney General's bad faith or gross negligence, so we hold that the Wisconsin Legislature cannot intervene to represent those same interests without the district court's

No. 19-1835

permission. The district court acted well within its discretion in denying that permission, so its decision is

AFFIRMED.

SYKES, *Circuit Judge*, concurring. I agree that the Wisconsin Legislature has not made a convincing case for mandatory intervention under Rule 24(a)(2) of the Federal Rules of Civil Procedure. I agree as well that the district judge reasonably exercised his discretion to deny permissive intervention under Rule 24(b)(1). I disagree, however, on a key part of the Rule 24(a)(2) analysis and write separately to explain my reasoning.

It is common ground that this case involves a novel application of Rule 24's intervention standards. There is no controlling or closely analogous precedent in our circuit, nor is there any guidance in caselaw from other circuits.

Two important legal issues are presented, and the majority opinion frames them up well. The first is how to treat section 803.09(2m) of the Wisconsin Statutes, which gives the Wisconsin Legislature (or either of its constitutive houses) the right to intervene in litigation challenging the constitutionality of a state law. The second is the "gross negligence or bad faith" standard that appears in some of our cases involving intervention motions in litigation against public officials or governmental bodies.

The state statute and the gross-negligence/bad-faith standard represent two sides of an all-or-nothing dilemma. If we defer to the State's policy choice as reflected in the statute, then the Wisconsin Legislature (or the Assembly or Senate alone) is *always* permitted to intervene of right under Rule 24(a)(2) whenever a state law is challenged. On the other hand, if we apply the highly restrictive gross-negligence/bad-faith standard to assess whether the Attorney General's representation is inadequate—a Rule 24(a)(2)

prerequisite—then the Legislature is *never* permitted to intervene of right.

To borrow a phrase from another context, the gross-negligence/bad-faith standard is strict in theory and fatal in fact.[1] No Attorney General or other government lawyer will be so derelict in his duty as to flunk the test. Requiring a showing of gross negligence or bad faith makes intervention of right unavailable in all but the most extreme cases—perhaps only when an Attorney General has gone so far as to refuse to defend a challenged law or take an appeal from an adverse decision. Even in those circumstances, it would be practically impossible to establish gross negligence or bad faith. We can safely assume that any government lawyer worth his salt will be able to offer a plausible justification—whether legal, factual, or prudential—for not mounting a defense or taking an appeal, thus preventing a finding of gross negligence or bad faith. In practice the requirement to show gross negligence or bad faith operates to preclude intervention of right for this entire class of cases. That's hard to reconcile with the language of Rule 24(a)(2), which calls for a contextual, case-specific analysis and does not imply the existence of categorical exclusions.

I will return to this point in a moment, but for now it suffices to say that neither of these extremes is consistent with Rule 24(a)(2). The majority steers clear of the first one, explaining that the State's policy choice as reflected in the statute informs the Rule 24(a)(2) calculus but cannot dictate

---

[1] *See, e.g., Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 314 (2013) (explaining that "[s]trict scrutiny must not be 'strict in theory, but fatal in fact'") (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 237 (1995)).

the outcome. Majority Op. at pp. 4–5. That's clearly correct; intervention in federal court is a question of federal procedural law.

The Legislature doesn't argue otherwise. What it *does* argue is that even though section 803.09(2m) is not conclusive, it should get very strong deference in federal court as a matter of comity. My colleagues do not specify the weight the statute deserves, and I agree with that approach. Intervention requires a particularized assessment of the intervenor's interest and relationship to the case. A specific deference rule is inconsistent with that norm.

I'm also in general agreement with the majority's discussion of the nature of the Legislature's interest. Majority Op. at 6–7. But I think it's important to clarify a point we made in *Wisconsin Education Association Council v. Walker* ("*WEAC*"), 705 F.3d 640, 658 (7th Cir. 2013), when we said that the intervenor's interest must be "unique." *WEAC* cited *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985), as support for the uniqueness requirement. The relevant passage in *Keith*, however, doesn't use the term "unique." It says this: "The [intervenor's] interest must be based on a right that belongs to the proposed intervenor rather than to an existing party in the suit." *Id.* In other words, the intervenor's interest must be based on a right that is *direct* and *independent*. That much is clear from the immediately preceding sentence: "A proposed intervenor must demonstrate a direct, significant[,] and legally protectable interest in the property [or transaction] at issue in the law suit." *Id.*

"Unique" is a suitable word to describe the nature of the required interest, but as used in this context, "unique" means an interest that is *independent of* an existing party's,

not *different from* an existing party's. If the intervenor has a significant independent interest but shares the same goal as an existing party (that is, if their interests align), then the standard for measuring the adequacy of existing representation changes, as *WEAC* later explains. 705 F.3d at 659 (explaining that a presumption of adequate representation arises when goals align). But sharing the same goal as an existing party doesn't defeat "uniqueness," properly understood. *Id.*

Applying this understanding, section 803.09(2m) plainly gives the Legislature a direct and independent right to defend state laws in court, and this right is neither derivative of nor subordinate to the Attorney General's. In Wisconsin the Attorney General is a constitutional officer, but his powers and duties are prescribed entirely by statute. *State v. City of Oak Creek*, 605 N.W.2d 526, 532 (Wis. 2000) (interpreting art. VI, § 3 of the Wisconsin Constitution). The Attorney General has a statutory duty to defend state laws when they are challenged in court. *Id.* at 536 (explaining the scope of section 165.25 of the Wisconsin Statutes, which authorizes the Wisconsin Department of Justice to "represent the state, any state department, agency, official, employee or agent" in any civil or criminal matter). By virtue of statutory amendments enacted late last year, the Legislature now has its own independent statutory right to appear in court in defense of state laws. This right is neither attenuated nor insubstantial: section 803.09(2m) reflects a sovereign policy judgment that the Attorney General is not the State's exclusive representative in court when state laws are challenged. Considerations of comity call on us to respect that policy choice.

Accordingly, the basic requirements for intervention as of right are satisfied: The Legislature "claims an interest relating to the property or transaction that is the subject of the action" and "is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." FED. R. CIV. P. 24(a)(2). Judge Conley ruled that because the Legislature shares the same goal as the Attorney General—their shared objective is to defend the challenged abortion regulations—its interest is not "unique," as *WEAC* requires. That's incorrect, as I've just explained, but his misstep was understandable given the possible ambiguity in *WEAC*'s use of that term.

My main point of disagreement relates to the majority's decision to apply the "gross negligence or bad faith" standard that this circuit has used in cases involving private parties who seek to intervene on the side of a governmental representative. I have two concerns. First, the standard is incompatible with the text of the rule. Here, in full, is the relevant provision:

> **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:
>
> …
>
> **(2)** claims an interest relating to the property or transaction that is the subject matter of the action[] and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

This language is the product of a substantive revision of the rule in 1966. 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1903 (3d ed. 2007) (discussing the history of the rule). As amended, the rule instructs the court to undertake a practical, case-specific analysis of the intervenor's legal interest, its relationship to the litigation, and the adequacy of existing parties to represent that interest. Judicially created tests that operate as categorical exclusions—like the "gross negligence or bad faith" requirement—are inconsistent with the contextual, case-specific analysis contemplated by the rule.

Second, the origins of the gross-negligence/bad-faith standard are deeply flawed. The standard is the product of errant doctrinal creep and has no solid foundation. To see why requires some excavation, so bear with me.

The problematic doctrinal shift came in our decision in *Ligas* and one of the cases cited there as support for requiring a private intervenor to show that the governmental representative has been grossly negligent or acted in bad faith in the litigation. Here's the key passage:

> A party seeking intervention as of right must only make a showing that the representation "may be" inadequate and "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, n.10 (1972). However, when the representative party is a governmental body charged by law with protecting the interests of

> the proposed intervenors, the representative is
> presumed to adequately represent their inter-
> ests unless there is a showing of gross negli-
> gence or bad faith. *United States v. South Bend
> Cmty. Sch. Corp.,* 692 F.2d 623, 627 (7th Cir.
> 1982); *United States v. Bd. of Sch. Comm'rs of
> Indianapolis,* 466 F.2d 573, 575–76 (7th Cir.
> 1972).

*Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007).

Our opinion in *Ligas* relied on two cases for the gross-negligence/bad-faith requirement. Both arose in desegrega-tion litigation brought by the United States against local school boards in Indiana. In the 1982 case of *South Bend Community School Corp.*, a nonprofit parents' group sought to intervene to represent the interests of the district's students. We affirmed the denial of intervention, saying this:

> [T]he students' interests were already repre-
> sented by the school board. The school board is
> a governmental body[,] and its officers are
> charged by law with representing the interests
> of the students. Adequate representation of the
> students is therefore to be presumed where, as
> here, there has been no showing of gross negli-
> gence or bad faith. *Commonwealth of Pennsylva-
> nia v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976).

*S. Bend Cmty. Sch. Corp.*, 692 F.2d at 627 (citation omitted).

This passage rests on a serious misreading of *Rizzo*, the case cited as support for the rule that a showing of gross negligence or bad faith is required in this situation. In fact, that case *never uses* the terms "gross negligence" or "bad

faith" or anything comparable. To be sure, *Rizzo* recognized that "a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee." 530 F.2d at 505. But the Third Circuit did not establish any fixed requirements for rebutting the presumption. Instead, the court undertook a practical, case-specific analysis as contemplated by the text of Rule 24(a)(2). *Id.*

The second case cited in *Ligas* was factually similar. In *Board of School Commissioners of Indianapolis*—decided a decade before the *South Bend* case—a parents' organization moved to intervene in desegregation litigation to represent the interests of the district's students. The district court denied intervention and we affirmed. We first concluded that the threshold requirements for intervention under Rule 24(a)(2) were satisfied: the parents and students had a cognizable interest in the subject matter of the litigation, and their interests might, as a practical matter, be impaired by the disposition of the case. *Bd. of Sch. Comm'rs of Indianapolis*, 466 F.2d at 575. We then moved to the question of the adequacy of the school board's representation:

> We must, however, agree with the trial court's conclusion that this conceded interest was adequately represented by the school board in those portions of the case which have thus far been adjudicated. "[R]epresentation is adequate if no collusion is shown between the representative and the opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor[,] and if the representative does not fail in the

> fulfillment of his duty." *Martin v. Kalvar Corp.*, 411 F.2d 552, 553 (5th Cir. 1969). See also *Stadin v. Union Electric Co.*, 309 F.2d 912, 919 (8th Cir. 1962).
>
> There have been no allegations that the school board's interests are adverse to the appellants or that it has, at any time, acted in bad faith. Rather, as we read it, the claim is that by entering into stipulations and a consent decree [as to a certain part of the case,] the school board failed to assert appellants' interests as vigorously and effectively as appellants would have had they been parties to the litigation … .

*Bd. of Sch. Comm'rs of Indianapolis*, 466 F.2d at 575 (alteration and citations omitted). We went on to hold that a mere disagreement over litigation strategy is not enough to show inadequacy of representation. *Id.*

Notice that the *Indianapolis* decision *never holds* that an intervenor must show gross negligence or bad faith by the governmental party as a prerequisite to intervention, as the *South Bend* case implied and *Ligas* expressly stated. Indeed, the term "gross negligence" is not found *anywhere* in the opinion. The term "bad faith" makes an appearance, but only in passing, and it's used in a purely descriptive manner. The decision notes that the intervenors did not allege bad faith by the school board; it never says *as a prescriptive matter* that a showing of bad faith is required. In short, there's no hint whatsoever that the court was promulgating a doctrinal test for evaluating the adequacy of representation under Rule 24(a)(2) in this category of cases.

So to recap: In *South Bend Community School* we implied, without any support or analysis, that Rule 24(a)(2) requires a showing of gross negligence or bad faith by government counsel as a prerequisite to intervention on the side of a governmental party. In *Ligas* we elevated *South Bend*'s unconsidered statement to a legal standard, again without support or analysis.

The *Wright & Miller* practice manual explains the origins of this doctrinal error. In a chapter discussing the adequacy-of-representation inquiry under the amended rule, the treatise says this:

> In a familiar case pre-dating the [1966] amend-ed rule[,] then-Judge Blackmun wrote that in-adequacy of representation is or may be shown "by proof of collusion between the representa-tive and an opposing party, by the representa-tive having or representing an interest adverse to the interven[or], or by the failure of the rep-resentative in the fulfillment of his duty." [*Stadin*, 309 F.2d at 919.] This was a wholly ac-curate statement. As will be seen later, a show-ing of any of the circumstances listed by Judge Blackmun is enough to establish inadequacy of representation. But in several cases the state-ment has been turned around and it has been said:
>
>> The rule is that representation is adequate if no collusion is shown between the representative and an opposing party, if the repre-sentative does not have or repre-

> sent an interest adverse to the
> proposed intervenor[,] and if the
> representative does not fail in the
> fulfillment of his duty. [*Martin*,
> 411 F.2d at 553.]

> It is one thing to say that inadequate represen-
> tation can be shown by establishing one of
> three circumstances. It is quite another to say
> that representation is adequate *unless* one of
> those three circumstances is present. If Judge
> Blackmun had said that representation is inad-
> equate "only" if one of the circumstances he
> listed were present[,] the proposition would be
> reversible, but he did not say that and there is
> nothing in his opinion to indicate that he was
> endeavoring to give a comprehensive list of the
> circumstances that can establish inadequacy of
> representation. The wide variety of cases that
> come to the courts make it unlikely that there
> are three and only three circumstances that
> would make representation inadequate and
> suggest that adequacy of representation is a
> very complex variable.

WRIGHT, *supra*, § 1909, at 392–93 (emphasis added).

In other words, the "turned around" version of Judge
Blackmun's statement commits the common error of treating
a *sufficient* condition as a *necessary* condition. Any of the
three circumstances on Judge Blackmun's list is clearly
*sufficient* to establish inadequate representation, but it's not
*necessary* to establish one of the three to demonstrate inade-
quate representation. Other circumstances may also suffice.

If the three circumstances on the Blackmun's list sound
familiar, they should. The mistaken "turned around" version
is a quote from *Martin*, 411 F.2d at 553. That same flawed
quotation from *Martin* appears in our 1972 *Indianapolis*
desegregation decision, which in turn was cited in our 1982
*South Bend* desegregation decision, which in turn provided
the support for the strict gross-negligence/bad-faith rule
announced in *Ligas*. Our use of the inaccurate *Martin* quota-
tion in the *Indianapolis* case is followed by a "see also" cita-
tion to *Stadin* where the original Blackmun statement
appears. *Bd. of Sch. Comm'rs of Indianapolis*, 466 F.2d at 575.
But we quoted the faulty "turned around" version from
*Martin* instead. *Id.* So to the extent that our circuit's "gross
negligence or bad faith" requirement rests on *Martin*'s
errant, inverted version of Judge Blackmun's statement in
*Stadin*, it is wrong for this additional reason.

Returning now to this case, the majority accepts that
*Ligas* and the two desegregation cases are distinguishable
because they involved *private parties* seeking to intervene on
the side of a governmental party. Majority Op. at p. 9. But
my colleagues apply the gross-negligence/bad-faith re-
quirement anyway. I disagree. Those cases do not control, as
the majority readily acknowledges, and because they are so
flawed, I would not extend their application beyond their
specific facts. Indeed, for the reasons I've just highlighted, I
think the cases are ripe for correction. But we're not asked to
revisit them here, so it's enough to note the flawed prove-
nance of the gross-negligence/bad-faith requirement and
confine it to cases involving intervention by private parties
seeking to enter the litigation on the side of a governmental
party.

All of that said, I think the basic underlying presumption is sound. As the majority explains, the default standard for evaluating the adequacy of existing representation is quite lenient. Majority Op. at p. 8. The Supreme Court has held that "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making this showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Our cases apply a presumption of adequate representation in two situations: when the intervenor and the named party share the same goal, and when the named party is a governmental official or body charged by law with protecting the intervenor's interest. *WEAC*, 705 F.3d at 659.

Presuming adequate representation makes sense in both situations. When the intervenor's and the named party's ultimate goals are identical, or when a governmental official or body is legally required to represent the intervenor's interest, it is reasonable, fair, and consistent with the practical inquiry required by Rule 24(a)(2) to start from a presumption of adequate representation and put the intervenor to a heightened burden to show a concrete, substantive conflict or an actual divergence of interests to overcome it. *Id.*; *see also Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir. 1996). Indeed, this is the general rule. *See* WRIGHT, *supra*, § 1909, at 393–94 (collecting cases).

But the presumption "does not mean that intervention always must be denied if the interests of an absentee and one of the parties are identical or if there is a party whose function it is to represent the absentee." *Id.* at 426–27. Rather, "[i]t

means only that there must be a concrete showing of circumstances in the particular case that make the representation inadequate." *Id.* at 427. I would apply the presumption of adequate representation here—*not* the gross-negligence/bad-faith requirement, which is badly flawed for the reasons I've discussed.

Still, I agree with the decision to affirm. The Legislature hasn't identified a significant, concrete conflict or divergence in interests between it and the Attorney General. The argument for intervention of right relies on the lenient "may be inadequate" standard and rests largely on political and policy differences with the Attorney General over abortion regulations, as well as disagreements about litigation strategy in this and other cases. That's not enough to rebut the presumption of adequate representation. It's possible that a concrete and significant conflict may arise down the road, but that showing has not been made. At this stage in the litigation, the Attorney General is adequately representing the shared goal of defending the challenged abortion regulations.

Finally, I agree with my colleagues that Judge Conley reasonably exercised his discretion in denying the Legislature's alternative request for permissive intervention under Rule 24(b)(1). I have nothing to add on that subject. Because my analysis of the Rule 24(a)(2) question differs from the majority's, I respectfully concur.